Filed 5/6/16  P. v. Piggee CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>　　Plaintiff and Respondent,<br><br>　v.<br><br>KALAMICE K. PIGGEE,<br><br>　　Defendant and Appellant. | B260410<br><br>(Los Angeles County<br>Super. Ct. No. YA089772) |

APPEAL from a judgment of the Superior Court of Los Angeles County. Eric C. Taylor, Judge.  Affirmed.

Gloria C. Cohen, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Scott A. Taryle and Eric J. Kohm, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Defendant Kalamice K. Piggee appeals from the judgment entered following a jury trial that resulted in his conviction of robbery (Pen. Code, § 211; count 1),[1] during which he used a deadly weapon (screwdriver) (§ 12022, subd. (b)(1)), and assault with a deadly weapon (§ 245, subd. (a)(1); count 2) and findings he had suffered two prior convictions for a serious felony (§ 667, subd. (a)), which qualified as strikes under the Three Strikes law (§§ 667, subds. (b)-(i), 1170.12, subds. (a)-(d)) and he had served a prior prison term (§ 667.5, subd. (b)). He was sentenced to prison on count 1 for 25 years to life, plus seven years for enhancements, consisting of five years for a prior serious felony conviction, one year for use of a deadly weapon, and one year for the prior prison term.

Defendant contends the judgment must be reversed, because "the conviction of an accused person while he is legally incompetent violates due process" (*Pate v. Robinson* (1966) 383 U.S. 375, 378) and the trial court improperly relied on *People v. Jones* (1991) 53 Cal.3d 1115 in denying his multiple requests for a hearing on his mental competency (§ 1368), despite substantial evidence of his incompetence, which necessitates a hearing "as a matter of right" (*People v. Pennington* (1967) 66 Cal.2d 508, 518-519).

We affirm the judgment. In the original case, Los Angeles County Superior Court case No. (LASC No.) YA083790, the trial court found defendant incompetent to stand trial and ordered him committed to Patton State Hospital. The court subsequently received notice that defendant's competency had been restored, and defendant was held to answer. When the prosecution advised that it was unable to proceed because of lost contact with the victim, the court ordered the case dismissed for lack of prosecution. Subsequently, the case was refiled under LASC No. YA089772, the present case. During jury deliberations, defense counsel presented the report of Dr. Sara Hough, who concluded defendant was incompetent to stand trial, and requested the trial court declare a doubt as to defendant's competency and suspend the trial proceedings. Although

---

[1]     All further section references are to the Penal Code.

2

declining to suspend proceedings, the court allowed the parties an opportunity to obtain additional medical evaluation of defendant's competency. In his report, Dr. Phani Tumu, an appointed prosecution expert, opined defendant was competent. The trial court declined to declare a doubt as to defendant's mental competency and suspend proceedings for a second competency hearing. Substantial evidence supports the trial court's rulings in view of the court's personal observations of and interactions with defendant and Dr. Tumu's report and opinion.

BACKGROUND

On March 13, 2012, about 7:00 a.m., Gregorio Machuca Navarro (Machuca), a maintenance person at the Normandie Casino in Gardena, was fixing the door to a small storage room in the bathroom with a screwdriver when defendant entered the bathroom and pushed Machuca in the back. As Machuca turned towards defendant, defendant grabbed his screwdriver, threatened him with it, and lunged at him. Machuca dodged away and tried to leave but defendant blocked the only exit. Retreating into a stall, Machuca closed and locked the door. After breaking through the door, defendant entered and struck Machuca, who fell to the ground. Climbing on top of him, defendant grabbed Machuca by the hair and bashed his head against the wall and toilet. When defendant demanded his wallet, Machuca gave up his wallet, which contained over $1,000, a cell phone, an employee identification badge, and his truck keys. After defendant left, Machuca followed and called for help.

As John Temple, a Normandie Casino security officer, went to investigate a reported altercation, he observed defendant and Machuca swinging fists at each other. After detaining defendant, Temple found two plastic bags.

At the casino, defendant acknowledged to Gardena Police Officer Ryan Nigg that the bags were his. Machuca's wallet containing about $1,000, a cell phone, an employee identification badge, truck keys, and a screwdriver were recovered from one bag. Asked if he took Machuca's money, defendant responded, "everything is in the bag."

At trial, defendant did not present any affirmative evidence.

3

DISCUSSION

Defendant contends the trial court committed prejudicial error in refusing to suspend trial proceedings and conduct a competency hearing (§ 1368), because substantial evidence established a doubt as to his mental competency to stand trial. No error occurred. Substantial evidence supports the trial court's findings that there was no substantial change of circumstances or new evidence casting a serious doubt on the finding of competency that would warrant a second competency hearing.

### *Relevant Trial Proceedings in LASC Nos. YA083790 and YA089772*

1. *LASC No. YA083790*

In LASC No. YA083790, defendant was charged with a single count of robbery (§ 211). Defendant entered a plea of not guilty.

On April 12, 2012, Dr. Jack Rothberg, a defense expert, evaluated defendant and diagnosed him with bipolar disorder. He opined defendant was incompetent to stand trial.

On April 23, 2012, after defense counsel declared a doubt as to defendant's competency, the trial court suspended the proceedings for evaluation of his mental competency in Department 95.

On May 21, 2012, the court found defendant incompetent to stand trial and committed him to Patton State Hospital until May 10, 2015, the maximum confinement period.

On August 2, 2012, a certification of defendant's mental competency from Patton State Hospital was filed with the court.

On September 12, 2012, defendant entered a plea of not guilty.

On October 29, 2012, defendant spoke to the trial court (Judge Eric C. Taylor) about his commitment at Patton State Hospital, where he broke his leg. He asserted he suffered from bipolar disorder for which he required medication and he had not been taking the medication at the time of the Machuca altercation. He then waived time to allow defense counsel time to prepare for trial. Defense counsel advised that defendant's competency had been restored and there was no declaration of doubt pending.

4

On November 26, 2012, defendant appeared in court. The court acknowledged it received his request for placement in a mental health or drug treatment program. The court also heard and denied his motion to discharge his counsel (*People v. Marsden* (1970) 2 Cal.3d 118 (*Marsden*)). Defendant then asserted he was being denied his rights to due process and under the Sixth Amendment. When the court discussed with defendant whether he would waive time again, he refused.

On January 2, 2013, defendant made another *Marsden* motion, which the court denied. Afterward, he requested an opportunity to communicate ex parte with the court and stated he had not been granted a *Romero* hearing (*People v. Superior Court (Romero)* (1996) 13 Cal.4th 497).[2] Defendant again asserted he was innocent because of his mental illness. On this occasion, he agreed to waive time.

On February 27, 2013, defendant withdrew his plea of not guilty and entered a plea of not guilty by reason of insanity. Defense counsel submitted psychiatric evaluations regarding defendant's sanity. The trial court granted the prosecution an opportunity to retain its own expert to evaluate defendant.

On March 27, 2013, following a pretrial hearing, the trial court denied defendant's *Romero* motion. Defendant claimed the court did so because the court did not like him.

On December 3, 2013, and on February 28, 2014, defendant made additional *Marsden* motions, which the court denied.

On March 6, 2014, the prosecutor advised the trial court that he was unable to proceed, because he had lost contact with the victim. The court ordered the case dismissed for lack of prosecution.

2. *LASC No. YA089772*

On May 1, 2014, the prosecution refiled the case. The two-count information charged defendant with, respectively, robbery (§ 211), during which he used a deadly weapon (screwdriver) (§ 12022, subd. (b)(1)) and assault with a deadly weapon (§ 245,

---

[2]     His *Romero* motion to dismiss the two alleged strikes was made on February 13, 2013.

5

subd. (a)(1)).  As to both counts, defendant allegedly suffered two prior serious felony convictions (§ 667, subd. (a)), which qualified as strikes under the Three Strikes law (§§ 667, subds. (b)-(i), 1170.12, subds. (a)-(d)), and he had served two prior prison terms (§ 667.5, subd. (b)).  Defendant entered a not guilty plea.

On June 23, 2014, defendant  appeared in court with counsel, who advised that defendant's wheelchair had been taken.  After noting defendant had been medically cleared from requiring a wheelchair, the court further noted that defendant repeatedly had refused to appear in court and if he continued to do so, the court would proceed without him.  Defendant requested a *Marsden* hearing.  Following the hearing, the court denied his motion.  When the court discussed a possible plea, defendant stated he would plead in exchange for hospitalization or time served.

On June 27, 2014, when defendant refused to appear in court, the court ordered him extracted from his jail cell.  Defendant appeared wearing a cast for his broken leg and requested additional time to consider how he would plead.

On September 3, 2014, defense counsel declared a doubt as to defendant's competency.  He asserted defendant could not communicate effectively with him and pointed out that when defendant was in court previously, he yelled about being "Jesus" and the "sheriff."  The court inquired how defendant's behavior had changed since his competency was restored and stated that in its opinion, defendant always "act[ed] out more in that way" whenever the court did not give him what he wanted.  Counsel admitted defendant always had been "difficult" in court, but asserted defendant was "clearly delusional" and his behavior had worsened.

The prosecutor pointed out after defense counsel had declared his belief in defendant's competency at the preliminary hearing, defendant was "ranting and raving." He noted at that time, the court placed on the record the fact defendant usually had to be extracted from his cell to appear in court, and once he arrived, he would claim a medical injury and that defendant was engaging in behavior for the purpose of obstructing and delaying the proceedings.  In view of such matters, the prosecutor stated his belief defendant was engaging in "forum shopping" by claiming that, although he was

medically cleared as to his broken leg, he still needed a wheelchair, compelling the case be tried in the downtown Los Angeles courthouse, which could accommodate a wheelchair case. He added that when the case was not transferred because the court found defendant did not need a wheelchair, defendant acted out and disrupted the proceedings by manipulating the system.

After noting it had spent "a lot of time to evaluate and observe" defendant, the court agreed defendant's goal was to be tried in downtown Los Angeles, adding that defendant always calmed down if such possibility was discussed. The court found whenever defendant got what he wanted, his behavior was fine. The court pointed out whenever the court and staff had to go to lockup because defendant refused to come out, the court observed defendant was calm until they arrived, at which point, "the show starts." After concluding defendant's behavior had not changed since his competency was restored, the court declined to declare a doubt.

On September 8, 2014, defendant refused to appear in court despite being "medically and psychologically cleared" to do so. After noting it had to order him extracted a number of times already, which was expensive and placed people at risk, the court announced it would not order his extraction.

The next day, defendant refused to appear in court unless a "wheelchair bus" was sent for him. The bus was sent. Defense counsel advised the court that after he explained to defendant the court would no longer order his extraction, defendant agreed to go to court. The court responded that defendant was engaging in ploys, including not allowing his cast to be removed. After arriving at the courthouse in a wheelchair bus, defendant refused to enter the courtroom, because he wanted to speak with defense counsel or a sheriff's department supervisor. The court allowed defense counsel to speak with him. Afterward, counsel advised the court that defendant would not enter the courtroom unless he could speak with his mother. The bailiff advised that defendant had responded to his request to enter by rambling about motions and walking away.

7

On September 10, 2014, defendant again claimed he required a wheelchair to attend court. When asked if he would attend if provided a wheelchair, defendant rambled incoherently and returned to his jail cell.

On September 13, 2014, Dr. Hough submitted her report regarding defendant's competency to defense counsel. She concluded defendant was "incompetent to proceed with trial."

On September 15, 2014, in light of Dr. Hough's report, defense counsel requested the court declare a doubt as to defendant's competency and suspend the proceedings. The prosecutor pointed out the court already had found defendant was not incompetent because circumstances had not changed since his competency was restored. He noted deliberations already had commenced and argued the jury should be allowed to finish because defendant's competency no longer had any bearing on the trial on the charged offenses. Defense counsel responded defendant's competency may have kept him from entering a plea of not guilty by reason of insanity.

The court placed on the record the fact defense counsel never requested the court appoint Dr. Hough to evaluate defendant; rather, while the court was dark, defense counsel made the request to another judge, who knew nothing about defendant's case. Counsel explained he contacted the other judge because defendant called his supervisor and was babbling. He acknowledged, however, defendant had been calling his supervisor on an ongoing basis.

The court declined to suspend jury deliberations while the court considered the competency issue. After noting that following restoration of his competency defendant had been engaging in the same type of behavior throughout the proceedings, the court found defendant was simply being manipulative.

Defense counsel requested a mistrial, because defendant was incompetent earlier in the proceedings, which affected his entry of a plea. The prosecutor argued such retroactive assertion of incompetence was not appropriate. He noted although the case had been around for nearly two and a half years, no issue of defendant's competency had

8

been raised until three days before trial and further argued defendant was being manipulative rather than incompetent.

The court readopted its earlier findings that defendant had been acting the same way throughout the proceedings after his competency was restored and he cooperated if he got his way but became disruptive and acted out when he did not. The court further found that nothing in Dr. Hough's report shed light on any new behavior or circumstances. The court declined to declare a doubt as to defendant's competency at that point, denied the mistrial motion, and ruled the trial would proceed.

On September 16, 2014, a day after the jury's verdicts and findings, defendant refused to enter the courtroom. Defense counsel reported defendant had asked him if counsel had killed the psychologist, i.e., Dr. Hough, and expressed concern about defendant's competency. The court declined to declare a doubt but continued sentencing to afford the parties an opportunity to obtain further medical evaluation regarding defendant's competency.

On October 26, 2014, Dr. Tumu, the prosecution's appointed expert, submitted to the court his report in which he opined defendant was competent.

On October 30, 2014, defendant appeared in court with his counsel, who again moved to have him declared incompetent. In opposition, the prosecutor pointed out Dr. Tumu had found defendant exaggerated the symptoms of his mental illness for secondary gain and he was competent. The court found defendant was competent and denied the defense motion to declare a doubt as to his competency.

On November 6, 2014, although cleared medically and psychologically, defendant did not appear, and the court proceeded with sentencing.

3. *Applicable Legal Principles*

An accused is incompetent to stand trial if, due to "mental disorder or developmental disability," he is "unable to understand the nature of the criminal proceedings or to assist counsel in the conduct of a defense in a rational manner." (§ 1367, subd. (a).) The due process standard is "'whether [the accused] has sufficient present ability to consult with his lawyer with a reasonable degree of rational

9

understanding—and whether he has a rational as well as factual understanding of the proceedings against him.'" (*Dusky v. United States* (1960) 362 U.S. 402.)

Section 1368 sets forth the criteria for a competency hearing. "When the accused presents substantial evidence of incompetence, due process requires that the trial court conduct a full competency hearing." (*People v. Jones*, *supra*, 53 Cal.3d 1115, 1152.) "Evidence is 'substantial' if it raises a reasonable doubt about the defendant's competence to stand trial." (*Ibid*.) "When a competency hearing has already been held and the defendant has been found competent to stand trial, however, a trial court need not suspend proceedings to conduct a second competency hearing unless it 'is presented with a substantial change of circumstances or with new evidence' casting a serious doubt on the validity of that finding. [Citations.]" (*Id*. at p. 1153.) "Evidence that merely raises a suspicion that the defendant lacks present sanity or competence but does not disclose a present inability because of mental illness to participate rationally in the trial is not deemed 'substantial' evidence requiring a competence hearing." (*People v. Deere* (1985) 41 Cal.3d 353, 358, disapproved on a different point in *People v. Bloom* (1989) 48 Cal.3d 1194, 1228, fn. 9.) Further, "'more is required to raise a doubt [of competence] than . . . psychiatric testimony that defendant is immature, dangerous, psychopathic, or homicidal or such diagnosis with little reference to the defendant's ability to assist in his own defense [citation].'" (*Deere*, at p. 35.) "'[T]o be entitled to a competency hearing, "a defendant must exhibit more than bizarre . . . behavior, strange words, or a preexisting psychiatric condition that has little bearing on the question of whether the defendant can assist his defense counsel. [Citations.]" [Citations.]'" (*People v. Sattiewhite* (2014) 59 Cal.4th 446, 464-465 (*Sattiewhite*).)

In short, the litmus test is whether the defendant has the capacity to understand the nature of the proceedings and to assist his counsel in his defense in a rational manner. A trial court's ruling regarding a competency hearing is entitled to great deference because "'[a]n appellate court is in no position to appraise a defendant's conduct in the trial court as indicating insanity, a calculated attempt to feign [mental incompetence] and delay the proceedings, or sheer temper.'" (*People v. Danielson* (1992) 3 Cal.4th 691, 727,

10

overruled on a different point in *Price v. Superior Court* (2001) 25 Cal.4th 1046, 1069, fn. 13.)

### 4. *Prerequisites to Second Competency Hearing Not Established*

Defendant fails to establish the prerequisites for a second competency hearing. A trial court's decision not to order a competency hearing is entitled to "great deference," *unless* the defendant demonstrates "'incompetence' that is 'substantial' as a matter of law." (*People v. Mai* (2013) 57 Cal.4th 986, 1033 (*Mai*); see also § 1369, subd. (f) [defendant's burden to demonstrate incompetence].) "[D]efense counsel must present expert opinion from a qualified and informed mental health expert, stating under oath and with particularity that the defendant is incompetent, or counsel must make some other substantial showing of incompetence that supplements and supports counsel's own opinion. Only then does the trial court have a nondiscretionary obligation to suspend proceedings and hold a competency trial." (*Sattiewhite*, *supra*, 59 Cal.4th at p. 465.)

Although a defendant's demeanor and irrational behavior may constitute substantial evidence of incompetence, "disruptive conduct and courtroom outbursts by the defendant do not necessarily demonstrate a present inability to understand the proceedings or assist in the defense." (*Mai*, *supra*, 57 Cal.4th at p. 1033.) "[T]he trial court is in the best position to observe the defendant during trial. [Citation.]" (*Ibid*.)[3]

In this instance, defendant has not met his burden to show his mental "'incompetence' . . . is 'substantial' as a matter of law." (*Mai*, 57 Cal.App.4th at p. 1033.) Substantial evidence in fact supports the trial court's findings that no substantial change of circumstances or new evidence was presented, which are the prerequisites for a second competency hearing.

When viewed in context, the issue of a second competency hearing was not properly before the court until September 3, 2014, when defense counsel expressed his

---

[3] The trial judge in this case also presided over most of the trial proceedings in the original case after defendant's competency was restored and until that case was dismissed.

11

concern about defendant's mental competency in light of Dr. Hough's report. (*Sattiewhite*, *supra*, 59 Cal.4th at p. 465 [denial of motion to suspend proceedings not error where counsel requested hearing without offering substantial evidence of incompetence].)

Dr. Hough's report and her opinion that defendant was mentally incompetent were not conclusively binding on the trial court. They were based solely on her one-time encounter with defendant, and her report does not address the pivotal issues of changed circumstances and new evidence. The trial court therefore was entitled to give, and gave, no credence to Dr. Hough's report and opinion. (*People v. Lewis and Oliver* (2006) 39 Cal.4th 970, 1047-1049 & fn. 25 [opinion defendant incompetent not substantial evidence when not credible]; *People v. Weaver* (2001) 26 Cal.4th 876, 953-954 [not substantial evidence where psychiatrist did not examine defendant and incompetency opinion based on observing defendant's in-court demeanor].)

Additionally, the trial court expressly found that, rather than a product of mental incompetency, defendant's bizarre behavior constituted a ploy and an attempt on defendant's part to manipulate the trial proceedings. These findings are amply supported by the court's personal observations of and interactions with defendant. The trial court also observed defendant had been consistently "ranting and raving" after his competency was restored. Defendant's participation during the trial reflected his understanding and use of legal concepts and procedures. He made multiple *Marsden* motions, a legal procedure through which a criminal defendant seeks to discharge his appointed counsel. He reminded the court no hearing had been held under *Romero*, a legal procedure to dismiss one or more alleged strikes under the Three Strikes law. He attempted to negotiate a favorable plea bargain by advising the court he would plead if he were hospitalized or received credit for time served.

Moreover, substantial evidence supports the trial court's findings that defendant was putting on "a show" when he refused to attend court, which refusal served to disrupt and delay the trial. His refusal to go to court ceased once the trial court announced it would no longer order him extracted from jail, which was costly and perilous, and he

12

could no longer put on "a show." Although no longer requiring a wheelchair, defendant also refused to attend court unless he had wheelchair accommodations. (*Mai*, *supra*, 57 Cal.4th at p. 1033 ["disruptive conduct and courtroom outbursts by the defendant do not necessarily demonstrate a present inability to understand the proceedings or assist in the defense"].)

The trial court's findings are further bolstered by Dr. Tumu's report and his opinion that defendant was competent. In contrast to Dr. Hough's report, Dr. Tumu's report reflected he took into account the history of defendant's behavior and the prior evaluations of his sanity and competency and provided a detailed analysis for his opinion. Dr. Tumu also noted Dr. Hough evaluated defendant in a setting where he could not be forcibly medicated, which could have led to the presentation of exacerbated symptoms.

Dr. Tumu pointed out that upon their meeting, defendant asked, "Are you from Department 95? Is this a competency evaluation?" "95" was "the San Fernando Mental Health Court." Defendant understood the concept of not guilty by reason of insanity, which he referred to by the acronym of "NGI." Further, defendant understood other legal concepts. He indicated that he was communicating with two attorneys whose practice concerned disability or patient law rights regarding his fractured ankle. He knew the names of the attorneys in this case and understood which one was prosecuting him and which was defending him. Further, he knew section 211 of the Penal Code as charging "robbery without a weapon" and that this was his original charge. He was able to express a rational reason for rejecting a plea deal, i.e., he would not receive credit for time served, and stated his understanding as to how such credit was calculated. Also, he recalled his prior criminal history and "all his previous forensic doctors and their conclusions."

Regarding defendant's bizarre behavior, Dr. Tumu explained that although he diagnosed defendant as mentally ill, he believed defendant was "embellishing his symptoms for secondary gain" and was "embellishing paranoia." Dr. Tumu concluded that defendant "was angling for mental health treatment," which was uncommon for those mentally ill. Further, he had "a rational understanding of the charges against him"; he "is able to rationally cooperate with his attorney"; and he "clearly understood the

13

purpose of [his] evaluation and how that can possibly impact his case." (*People v. Ramos* (2004) 34 Cal.4th 494, 508 [no competency hearing where mere preexisting psychiatric condition not bearing on defendant's ability to assist defense counsel].)

DISPOSITION

The judgment is affirmed.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


BOREN, P.J.

We concur:


CHAVEZ, J.


HOFFSTADT, J.